## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DAVID H. NELSON, etc., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0520-WS-M |
| ) | |
| **WHIRLPOOL CORPORATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER

This matter is before the Court on the plaintiffs' motion to remand. (Doc. 7). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 1, 7, 8, 10, 12, 13), and the motion is ripe for resolution.[1] After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be denied.

### BACKGROUND

On January 30, 2009, a combination air conditioner/heater window unit manufactured by defendant Whirlpool Corporation ("Whirlpool") and sold by defendant Lowe's Home Centers, Inc. ("Lowe's") exploded and/or caught fire, setting afire the home of the plaintiffs. They escaped the conflagration, but their three minor children did not. In this lawsuit, the plaintiffs, as the personal representatives of their children's estates, sue for their wrongful deaths under Alabama law, alleging claims of negligence, wantonness and products liability.[2]

---

[1]The plaintiffs' motion for leave to file a reply brief, (Doc. 13), which has not been opposed by the defendants, is **granted**.

[2]David Nelson sues as the personal representative of two estates, his wife Anne as personal representative of the third.

The original complaint, filed in May, named as defendants Lowe's, Home Depot and Clarke-Washington Electric Membership Corporation ("Clarke"). After a visual inspection of the site in July confirmed Whirlpool as the manufacturer and Lowe's as the seller, the plaintiffs filed an amended complaint deleting Home Depot and adding Whirlpool.

Removal was effected by Whirlpool and Lowe's on the basis of diversity of citizenship. Although Clarke, like the plaintiffs, is an Alabama citizen, the removing defendants argue its citizenship can be ignored because it was fraudulently joined. The plaintiffs respond that Clarke was not fraudulently joined and that, in any event, the defendants have not shown that the amount in controversy exceeds $75,000. The plaintiffs seek remand and an award of their fees and expenses.

## DISCUSSION

"[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); *accord Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008). The removing defendants must therefore show both that Clarke was fraudulently joined and that the amount in controversy exceeds $75,000. *E.g., Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1283 (11th Cir. 2006) (fraudulent joinder); *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002) (amount in controversy).

## I.  Amount in Controversy.

"[W]e hold that where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional

requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *overruled on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Because the plaintiff has made an unspecified demand for damages, the *Tapscott* standard applies here.[3]

"When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement. If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

Whirlpool and Lowe's offer no extrinsic evidence as to the amount in controversy. In both their notice of removal and their brief in opposition to remand, they rely exclusively on the fact that the suit is one for wrongful death. (Doc. 1 at 2; Doc. 12 at 14). In order for this argument to succeed, the jurisdictional amount must be "facially apparent," *Williams*, 269 F.3d at 1319, or "readily deducible" from the face of the complaint, rather than merely "speculative." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211, 1213 n.63 (11th Cir. 2007). The removing defendants say the amount in controversy is readily deducible from the complaint, citing this Court's previous ruling that "[c]ertain injuries are by their nature so substantial as to make it readily apparent that the amount in controversy is satisfied." *Sanderson v. Daimler Chrysler Motor Corp.*, 2007 WL 2988222 at *1 (S.D. Ala. 2007).

Death is certainly a most grievous injury, but Alabama's unique wrongful death

---

[3]The parties do not address whether the jurisdictional threshold may be met by aggregating the claims as to all three decedents or both plaintiffs. The Court assumes that it cannot. *See Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 974 (11th Cir. 2002) ( "We do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit," but only when the plaintiffs "unite to enforce a single claim or right, in which they have a common and undivided interest.") (internal quotes omitted).

scheme precludes the Court from directly applying *Sanderson* here. *Sanderson* recognized that some injuries are so devastating that they establish the amount in controversy based on the compensatory damages more likely than not flowing therefrom. In an Alabama wrongful death case, however, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions — not to compensate the plaintiff." *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007). The plaintiffs have undoubtedly suffered "a shattering loss that no parents would be willing to share at any price," (Doc. 12 at 16), but a jury cannot lawfully compensate them for that loss. Because compensatory damages cannot be awarded in a wrongful death action under Alabama law, they cannot be considered in assessing the amount in controversy. *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1299-1300 (11th Cir. 1999) (punitive damages were not recoverable and so could not be considered in evaluating the amount in controversy).

The plaintiffs argue that, because wrongful death damages are purely punitive, the only relevant factor in assessing the amount of such damages is "the conduct and culpability of the specific defendant," which is unique to each case and thus speculative for purposes of *Lowery*. (Doc. 7 at 13).[4] But while the jury may, as in other cases involving punitive damages, consider the culpability of the defendant's conduct and the need to deter others from engaging in similar conduct, *Deaton, Inc. v. Burroughs*, 456 So. 2d 771, 776 (Ala. 1984) the amount of punitive damages in a wrongful death case is not based only on the defendant's conduct. Rather, that amount is also "determined by the gravity of the wrong done." *Id*.

Far from ignoring the tragedy of a life cut short in assessing damages for its demise, Alabama's wrongful death scheme elevates it to prime importance. "The very purpose of punitive damages, then, in a wrongful death context, rests upon the Divine

---

[4]*See Lowery*, 483 F.3d at 1220 (where the defendant needed only to show combined compensatory and punitive damages of $12,500, "[t]o reach such a conclusion [based only on the complaint], we would necessarily need to engage in impermissible speculation").

concept that all human life is precious." *Estes Health Care Centers, Inc. v. Bannerman*, 411 So. 2d 109, 113 (Ala. 1982). "[I]t is indeed the value of life itself upon which punitive damages are premised." *Id*. Thus, "[t]he legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved — preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death." *Campbell v. Williams*, 638 So. 2d 804, 811 (Ala. 1994). The jury is specifically expected to consider the finality of death in fixing the amount of punitive damages, *id*., and lawyers may properly make jury arguments concerning the value of human life (in general, not of the particular decedent).[5] While it is true that "the policy of this state is to regard human life as being beyond measure in terms of dollars," *id*., that policy exists to prevent juries from valuing some lives less than others,[6] not to require them to ignore the great value of every life.[7]

The complaint alleges that the defendants wantonly took human life. Given that Alabama law views every human life as precious and requires juries to consider the finality of its premature destruction in assessing damages, the Court concludes that it is readily deducible from the complaint that the amount in controversy exceeds $75,000.[8]

---

[5]*Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1215-16 (Ala. 1999); *Atkins v. Lee*, 603 So. 2d 937, 942 (Ala. 1992).

[6]The policy precludes juries from considering, inter alia, the decedent's wealth, talents, education, or station in life. *Id*.

[7]The centrality of the preciousness of human life figures in other aspects of Alabama's wrongful death scheme. First, even though only punitive damages may be awarded, they may be awarded for merely negligent conduct. Ala. Code § 6-5-410(a). Second, each joint tortfeasor is jointly and severally liable for the entire award, regardless of how slight its culpability. *Campbell*, 638 So. 2d at 809-12.

[8]It might be possible to argue that the negligent taking of human life does not, without more, place over $75,000 in controversy. Because the complaint alleges also the wanton taking of human life, the Court need not resolve that question.
By considering the allegation of wantonness, the Court does not impermissibly

Two fellow district judges have concluded that, post-*Lowery*, an Alabama wrongful death complaint that does not include an explicit demand for over $75,000 must be remanded. In *Thibodeaux v. Paccar, Inc.*, 592 F. Supp. 2d 1377, 1380 (M.D. Ala. 2009), the Court relied on Alabama's pattern jury instructions to conclude that "the measure of damages in an Alabama wrongful death claim is not the value of human life but rather the wrongfulness of the defendant's conduct" and that "the only damages recoverable, therefore, are those related to the defendant's conduct and culpability." *Id*. at 1381.[9] As discussed above, however, Alabama law is to the contrary.[10] *Harden v. Peek*, 2009 WL 1423367 at *3 & n.1 (S.D. Ala. 2009), and *Dominguez v. Peek*, 2009 WL 1423405 at *3 & n.1 (S.D. Ala. 2009), relied on the same reasoning and are subject to the

---

speculate about case-specific facts. Regardless of how a particular defendant's conduct comes to be regarded as wanton, the mere fact that the defendant wantonly took human life heightens Alabama's public policy of awarding damages to vindicate the sanctity of all life.

The burden on the removing defendant is not to show that the amount in controversy necessarily is above $75,000, but only to show that it "more likely than not" exceeds that amount. *Williams*, 269 F.3d at 1320; *Kirkland*, 243 F.3d at 1281 n.5; *Tapscott*, 77 F.3d at 1357. The wanton taking of human life satisfies either standard.

[9]Judge Fuller has relied on *Thibodeaux* to order remand in several other cases, but they do not amplify the reasoning provided in *Thibodeaux*. *See Seaborn v. Michelin North America, Inc.*, 2009 WL 435071 (M.D. Ala. 2009); *Pittman v. General Motors Corp.*, 613 F. Supp. 2d 1250 (M.D. Ala. 2009). Judge Fuller has, however, acknowledged that "there is some commonsense appeal to th[e] contention" that a claim for wrongful death renders the amount in controversy facially apparent. *Id*. at 1252.

[10]Judge Fuller quoted that portion of the pattern charge stating that the jury is "'not to consider the monetary value of the life of the decedent.'" *Id*. at 1381 (quoting Alabama Civil Pattern Jury Instruction 11.18). This instruction properly precludes a jury from awarding compensatory damages based on the value of the decedent's life, but it does not preclude a jury from considering the value of human life in general. As discussed in text, Alabama juries are expected to weigh such considerations.

same objection.[11]

One Alabama district judge has denied a motion to remand a wrongful death action removed on the strength of the complaint alone. While the Court does not embrace all the reasoning found in *Roe v. Michelin North America, Inc.*, 637 F. Supp. 2d 995 (M.D. Ala. 2009), it does concur that "[n]othing in *Lowery* says a district court must suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *Id.* at 999. Indeed, district courts are instructed to apply common sense in determining if a plaintiff has stated a viable claim against a resident defendant. *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005). If the Court is required to employ common sense in assessing whether removal jurisdiction exists because the resident defendant was fraudulently joined, it is difficult to see how it could be precluded from using common sense in determining whether removal jurisdiction exists because the amount in controversy exceeds $75,000.[12] Few things would defy common sense more completely than insisting that a suit for wantonly killing a human being, in which the damages are designed to vindicate "the Divine concept that all human life is precious," the plaintiff may explicitly argue "the value of life itself," and the jury is expected to consider "the finality of death" in assessing damages, does not place more than $75,000 in controversy.

---

[11]*Harden* and *Dominguez*, among others, correctly observe that, post- *Lowery*, the amount in controversy cannot be established by a review of jury verdicts in similar cases, including wrongful death cases. 2009 WL 1423367 at *3; 2009 WL 1423405 at *3; *accord Yates v. Medtronic, Inc.*, 2008 WL 4016599 at *10-11 (S.D. Ala. 2008); *Siniard v. Ford Motor Co.*, 554 F. Supp. 2d 1276, 1277-78 (M.D. Ala. 2008). No citation to past results, however, is necessary to support the Court's conclusion that the wanton taking of human life puts more than $75,000 in controversy.

[12]Just as common sense does not replace the "any reasonable possibility" standard for fraudulent joinder but illuminates how that determination is to be made, common sense does not replace *Lowery*'s "readily deducible" standard but rather informs it.

## II.  Fraudulent Joinder.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."  *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).   "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."  *Coker v. Amoco Oil Co*., 709 F.2d 1433, 1440-41 (11th Cir. 1983).  Conversely, if no such possibility exists, the joinder is fraudulent as a matter of law.  *Id*. at 1440.[13]  There must be "no *reasonable* possibility" of legal liability; a mere *theoretical* possibility will not prevent a conclusion of fraudulent joinder.  *Legg v. Wyeth*, 428 F.3d 1317, 1325 & n.5 (11th Cir. 2005) (emphasis added).   The burden is on the defendant to make the required showing by "clear and convincing evidence."  *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).  "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *accord Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) ("[A]ny ambiguity or doubt about the substantive law favors remand to state court.") (internal quotes omitted).

The amended complaint alleges that the heater exploded and/or caught fire, causing the house fire that claimed the children's lives.  (Doc. 1 at 53).  The complaint alleges that Whirlpool manufactured the heater, that Lowe's sold it, that they were negligent or wanton in doing so, and that their conduct renders them liable under the Alabama Extended Manufacturers' Liability Doctrine.  (*Id*. at 54-55).  There is no allegation that Clarke had anything to do with the heater, which admittedly was the origin

---

[13]*Accord Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) (the issue is "whether the facts alleged in Plaintiffs' complaint state even an arguable cause of action under Georgia law") (emphasis omitted).

-8-

of the fire.  Instead, the complaint alleges that Clarke failed to properly operate, maintain and inspect the electrical distribution lines, distribution transformer, overhead service entrance cable, meter box and meter set servicing the plaintiffs' home and failed to provide proper and adequate over-current and surge protection to these components of Clarke's delivery system.  (*Id*. at 55-56).

The plaintiffs admit they have no evidence indicating there was anything wrong with any of these components, and they admit they have no evidence that any of these components experienced a surge or similar event.  This would appear to be a formidable obstacle to denying fraudulent joinder, but the plaintiffs gamely offer several arguments to the contrary.

First, speaking through their expert, they note that none of the components have been examined, tested or disassembled, and they conclude it would thus be "premature" to "eliminate" any of the components as a cause of the fire.  (Schulz Affidavit, ¶¶ 38-46). The hidden premise of this argument is that a plaintiff is free to sue anyone without any inculpating evidence whatsoever, so long as he also lacks conclusive exculpating evidence.  The plaintiffs offer no authority for any such breathtaking proposition.

The defendants urge the Court to apply the rule announced in *Sellers v. Foremost Insurance Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996).  According to *Sellers*, when the fraudulent joinder inquiry revolves around facts that do not lie within the plaintiff's possession (such as whether Clarke's equipment was defective or experienced a surge), the plaintiff's allegations must satisfy Rule 11; that is, "after an inquiry reasonable under the circumstances ..., the factual contentions have evidentiary support or ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  As the Court has previously employed *Sellers*,[14] and as the plaintiffs offer no reason why it should not do so here, the Court scrutinizes the plaintiffs' allegations pursuant to *Sellers*.

---

[14]*Bumann v. Depuy, Inc*., Civil Action No. 03-0084-WS-M, Doc. 25 at 4.

The plaintiffs fail this inquiry at two points.  First, they do not suggest that the appropriate examinations and testing are likely to uncover evidence that Clarke's components were defective or experienced a surge.  Instead, as noted above, they cling to the impossibility of ruling out the discovery of such evidence.  (Doc. 7 at 6-7, 8).  Their position simply reveals that the possibility of linking Clarke to the fire is merely theoretical, not practical, and thus insufficient under *Legg*.

Second, the plaintiffs did not perform an investigation reasonable under the circumstances before naming Clarke as a defendant.  According to the plaintiffs themselves, they sued Clarke knowing nothing more than that Clarke supplied electricity to the residence.  After suit was filed against Clarke, Lowe's and Home Depot, representatives of the plaintiff and these entities, plus Whirlpool,[15] conducted a joint visual inspection of the site, which confirmed Whirlpool as the manufacturer and Lowe's as the seller but which — as the plaintiffs' expert acknowledges — contributed no evidence that Clarke was in any way responsible for the fire.

The plaintiffs assert they sued Clarke without any evidence to support Clarke's liability in order to arrange the joint inspection and thereby avoid a claim of spoliation. (Doc. 13 at 2).  No doubt it was prudent to arrange a joint inspection, but the plaintiffs do not explain why it was necessary to sue Clarke before the inspection occurred; indeed, Whirlpool participated in the inspection even though it had not been sued.  The original naming of Clarke as a defendant was thus done without first undertaking an inquiry reasonable under the circumstances.

Nor did the visual inspection — which revealed no evidence suggestive of Clarke's liability — constitute an inquiry reasonable under the circumstances.  The plaintiff's own expert concedes that appropriate examination, testing and disassembly is an essential predicate "to even begin to evaluate whether or not the electric utility shares or bears alone any responsibility" for the fire.  (Schulz Affidavit, ¶ 46).  That is, the

---

[15](Schulz Affidavit, ¶ 36).

plaintiffs knew there was no factual basis for alleging Clarke was responsible for the fire, and that there could be no such basis until further examination and testing occurred. Thus, such examination and testing were a necessary part of any reasonable inquiry before suing Clarke unless such examination and testing could not reasonably be had. Because there is no indication in the record that the plaintiffs attempted to arrange with Clarke and others for such examination and testing, or that the defendants refused to cooperate, the plaintiffs did not engage in a reasonable inquiry.[16]

The plaintiffs' second argument is based on the affidavit of their other expert, who inspected the house before suit was filed and noticed (or was told of) several instances of improper wiring below the meter box. (Posey Affidavit, ¶¶ 5-7). Although this wiring was the direct responsibility of the homeowners rather than Clarke, the plaintiffs note that a utility can be liable if it supplies electricity to a residence with actual knowledge of a defective or dangerous condition in the home's wiring. *McGinnis v. Jim Walter Homes, Inc.*, 800 So. 2d 140, 144 (Ala. 2001). Because the expert states the wiring issues would have been open and obvious to Clarke (they lay in view just below the meter, which Clarke's agent would regularly read), (Posey Affidavit, ¶ 8), the plaintiffs conclude they have evidence of Clarke's negligence. (Doc. 7 at 7).

Perhaps they do, but the amended complaint contains no allegation that Clarke wrongfully supplied electricity to a house with defective wiring. On the contrary, and as discussed above, the amended complaint carefully and explicitly delineates Clarke's alleged wrongdoing, which is confined to problems with Clarke's components or a surge event affecting them. In order to escape fraudulent joinder, there must be a "possibility that the state law might impose liability on a resident defendant *under the circumstances alleged in the complaint*." *Florence*, 484 F.3d at 1299 (emphasis added). Because the

---

[16]No legal time constraints compelled the plaintiffs to sue when they did, since the amended complaint was filed four months after the fire and the amended complaint two months later, leaving 1½ years remaining on the statute of limitations.

circumstances on which the plaintiffs and Posey rely are not alleged in the complaint, they are irrelevant to the fraudulent joinder analysis.

Whirlpool and Lowe's ask the Court to dismiss Clarke as a defendant. (Doc. 12 at 9). Because they have not attempted to show they have standing to seek dismissal of a co-defendant, the Court declines to do so. The proper remedy on a finding of fraudulent joinder is not dismissal but to "ignore the presence of the non-diverse defendant." *Henderson*, 454 F.3d at 1281.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion to remand is **denied**. The plaintiffs' motion for an award of fees and expenses, (Doc. 7 at 13), is likewise **denied**.

DONE and ORDERED this 13th day of November, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE