# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. NELSON, etc., et al., | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | ) CIVIL ACTION 09-0520-WS-M |
| | ) |
| WHIRLPOOL CORPORATION, et al., | ) |
| | ) |
|     **Defendants.** | ) |

## ORDER

This matter is before the Court on a motion to reconsider filed by defendant Clarke-Washington Electric Membership Corporation ("Clarke"), and the plaintiffs' joinder in Clarke's motion, which the Court construes as a second motion to reconsider. (Docs. 20, 27).[1] The defendants have filed briefs in opposition and Clarke a reply, (Docs. 26, 29, 31), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motions to reconsider are due to be denied.

## BACKGROUND

The plaintiffs sued a number of defendants in state court after their three children were killed in a home fire. Defendants Whirlpool Corporation ("Whirlpool") and Lowe's Home Centers, Inc. ("Lowe's") removed on the basis of diversity of citizenship.[2] Although both the plaintiffs and Clarke are citizens of Alabama, the removing defendants

---

[1]Clarke's motion to reconsider included in the alternative a motion to dismiss. (*Id.* at 1, 10-11). That motion has previously been denied for failure to file the brief required by Local Rule 7.1(a). (Doc. 21).

[2]Lowe's has recently been dismissed without prejudice on joint stipulation of the parties. (Doc. 32).

argued that Clarke was fraudulently joined, so that its citizenship was irrelevant.

The plaintiffs moved to remand, arguing that Clarke was not fraudulently joined and that the defendants had not met their burden of showing that the amount in controversy exceeds $75,000. The Court rejected the plaintiffs' position and denied the motion to remand. (Doc. 17). The motions to reconsider challenge that ruling.

## DISCUSSION

The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted).[3] As this Court has recently noted:

> Motions to reconsider serve a valuable but limited function. They

---

[3] While *Mays* and *Wilchombe* involved post-judgment motions under Rule 59(e), courts within this Circuit have often applied these principles to pre-judgment motions to reconsider. *E.g., Busby v. JRHBW Realty, Inc.*, 2009 WL 1181902 at *2 (N.D. Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation, Inc.*, 2008 WL 4459085 at *2 (M.D. Fla. 2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D. Ala. 2007); *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). This is only sensible, since allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context. *E.g., Gibson*, 511 F. Supp. 2d at 1185 (even pre-judgment, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly").

>do not exist to permit losing parties to prop up arguments previously
>made or to inject new ones, nor to provide evidence or authority previously
>omitted. They do not, in short, serve to relieve a party of the consequences
>of its original, limited presentation.

*Dyas v. City of Fairhope*, 2009 WL 5062367 at *3 (S.D. Ala. 2009).

The Court has become accustomed to, if a bit weary of, the increasingly common practice of litigants presenting superficial argument on a motion, suffering an adverse ruling, and only then deciding to address the issue seriously.[4] Clarke does this day-late-and-dollar-short approach one better; while most movants on motion to reconsider actually, though ineffectually, weigh in on the underlying motion while it is pending, Clarke chose to remain silent, filing nothing in support of the plaintiffs' motion to remand. It does not on motion to reconsider seek to improve on its initial, deficient briefing, but instead injects itself into the issue for the first time only after receiving what it deems an unfavorable decision. Clarke had every opportunity to be heard before the Court's ruling but simply elected to forego it. Indeed, Clarke admits that it "made a mistake by failing to join in the plaintiffs' Motion to Remand or to make such a motion independently ...." (Doc. 20 at 2). Its neglect does not furnish grounds to ignore the tight parameters of a motion to reconsider.[5]

Whirlpool argues that the plaintiffs' motion to reconsider comes too late because it

---

[4]*E.g., Equal Employment Opportunity Commission v. Jack Marshall Foods, Inc.*, Civil Action No. 09-160-WS-M, Doc. 87 (January 4, 2010); *Dyas v. City of Fairhope*, 2009 WL 5062367 (S.D. Ala. 2009); *Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 4898354 (S.D. Ala. 2009); *Board of Water and Sewer Commissioners v. Alabama Department of Transportation*, 2009 WL 2230815 (S.D. Ala. 2009); *Nicholson v. City of Daphne*, 2009 WL 2045152 (S.D. Ala. 2009); *Carstarphen v. Deutsche Bank National Trust Co.*, 2009 WL 1537861 (S.D. Ala. 2009); *Young v. City of Gulf Shores*, 2009 WL 321221 (S.D. Ala. 2009).

[5]However, because the motions to reconsider address subject matter jurisdiction, the Court addresses all of the arguments presented, even though most are untimely raised. *See Carstarphen*, 2009 WL 1537861 at *2 n.5.

was not filed within the time required by Rule 59(e). (Doc. 29 at 2-3). That rule, however, applies only to motions to alter or amend a judgment. Because the Court has entered no judgment, Rule 59(e) does not apply. On the contrary, "[a] district court may reconsider and amend interlocutory orders at any time before final judgment." *Harper v. Lawrence County*, 2010 WL 21179 at *2 (11th Cir. 2010); *accord Toole v. baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (Rule 59 does not apply to interlocutory orders).

Whirlpool also argues that the plaintiffs' motion to reconsider is precluded because, before filing it, the plaintiffs have filed a motion (still pending) for leave to take an interlocutory appeal from the order denying remand and thus have "already selected [their] remedy." (Doc. 29 at 3). The defendants cite no authority for the unlikely proposition that a litigant cannot pursue both courses, and the Court's brief research indicates that the Eleventh Circuit has repeatedly noted the practice without condemning it.[6]

**I. Amount in Controversy.**

Clarke asserts that the Court made "manifest errors of law" in concluding that a claim under Alabama law for the wanton taking of a human life places more than $75,000 in controversy. (Doc. 20 at 1). It relies for this proposition on two district court cases, (*id*. at 7-9), but the Court previously examined these cases and found them to inaccurately state Alabama law. (Doc. 17 at 6-7). Clarke does nothing to show that the Court's conclusion was wrong, much less manifestly so.[7]

---

[6]*E.g., Aldana v. Del Monte Fresh Produce, Inc.*, 578 F.3d 1283, 1287 n.2 (11th Cir. 2009); *Stevens v. Battelle Memorial Institute*, 561 F.3d 1200, 1201 (11th Cir. 2009); *Atlantic Sounding Co. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1264 (11th Cir. 2006).

[7]The point of Clarke's argument is less than clear. It cites the district court cases for the proposition that the amount of punitive damages in an Alabama wrongful death

Clarke also argues that it is impossible to show more than $75,000 in controversy absent affirmative "evidence" of the defendants' culpability. (Doc. 20 at 9-10; Doc. 31 at 11-12). Clarke misapprehends the jurisdictional analysis as it pertains to the amount in controversy. The question is not whether the plaintiffs will in fact prevail or recover damages exceeding $75,000 but whether the amended complaint places that amount in controversy. *E.g., Louque v. Allstate Insurance Co.*, 314 F.3d 776, 782 (5th Cir. 2002).[8] As the Court previously ruled, wantonly causing the death of a human being, which is what the amended complaint alleges, places more than $75,000 in controversy.[9]

The plaintiffs argue that Alabama's pattern jury charges do not address the preciousness of human life and conclude that, "from a practical perspective," juries therefore consider only the wrongfulness of the defendant's conduct in assessing the amount of punitive damages. (Doc. 27 at 4). In fact, the pattern charge states that wrongful death damages are "imposed for the preservation of human life and as a deterrent to others to prevent similar wrongs." Alabama Civil Pattern Jury Instruction 11.18.[10] It is reversible error to instruct the jury only as to the punitive purpose of wrongful death damages without also telling them of the deterrent purpose of such

---

case must be based exclusively on the wrongfulness of the defendant's conduct, yet it concedes that the Court's contrary conclusion — that the amount of punitive damages is also overtly tied to the sanctity of human life and the enormity of wrongly taking it — "may not have been clearly erroneous." (Doc. 20 at 9).

[8]"[W]hen determining the amount in controversy for diversity purposes, a federal court need not pre-try the sufficiency of the plaintiff's complaint. ... Thus, the question before us is whether the complaint, fairly read, states a claim exceeding $75,000," assuming "[a] successful result for [the plaintiff] on the merits of her claims ...." *Id.*

[9]Clarke seems to think it important that is a products liability case. (Doc. 20 at 9-10; Doc. 31 at 5-6). It isn't. What matters is that the complaint alleges the defendants wantonly took the decedents' lives.

[10]The plaintiffs quote the entire pattern charge but inexplicably omit this key language. (Doc. 27 at 4).

-5-

damages. *Ayres v. Lakeshore Community Hospital*, 689 So. 2d 39, 41 (Ala. 1997). While the punitive purpose of wrongful death damages focuses on the wrongfulness of the defendant's conduct, the deterrent purpose focuses on the need to preserve human life. *Id.*; *Estes Health Care Centers, Inc. v. Bannerman*, 411 So. 2d 109, 113 (Ala. 1982) ("[T]he amount of an award of punitive damages may be measured by ... the need to deter similar wrongs [defined as "the wrongful taking of human life"] in order to preserve human life.").

Moreover, and as discussed in the Court's previous order, in closing argument lawyers properly may, and typically do, stress the value of human life. *E.g., Atkins v. Lee*, 603 So. 2d 937, 942 (Ala. 1992) (agreeing that "the intrinsic value of life is the proper subject for argument"). In *Estes*, the lawyer properly argued, "How valuable and how precious is a human life? ... Would any amount of money suffice for those lives [of the Iranian hostages]? ... [A]nd I submit to you that the life that [the decedent] had during his lifetime was worth as much to him as mine is to me and any other individual in the world is to them." 411 So. 2d at 11-13. In light of the actual language and meaning of the pattern charge, especially as amplified by judicially sanctioned jury argument, it is untenable to suggest that Alabama juries as do not consider the value of human life in assessing wrongful death damages.

## II. Fraudulent Joinder.

As set forth in the Court's previous order, the only allegations of the amended complaint as to Clarke are that it failed to properly operate, maintain and inspect the electrical distribution lines, distribution transformer, overhead service entrance cable, meter box and meter set servicing the plaintiffs' home and failed to provide proper and adequate over-current and surge protection to these components of Clarke's delivery system. Because the plaintiffs sued Clarke without a shred of evidence that any of these components experienced a surge or otherwise failed, and because they sued Clarke

without first performing an inquiry into these matters that was reasonable under the circumstances, the Court ruled that Clarke was fraudulently joined.

Clarke argues, obscurely, that fraudulent joinder does not exist if the plaintiff's claim may be warranted by "a nonfrivolous argument for the extension, modification, or reversal of existing law." (Doc. 20 at 6; Doc. 31 at 2, 3-4). The Court can detect nothing tying this proposition to the circumstances of this case. The Court's finding of fraudulent joinder was not based on a determination that Alabama law precludes liability for an electrical supplier's fault in operating, maintaining and inspecting its equipment or protecting it from surge, nor have either the plaintiffs or Clarke identified any legal argument for extending, modifying or reversing any existing Alabama law.

Clarke appears to argue — again, obscurely — that fraudulent joinder can occur only if the plaintiff's claim against the resident defendant is legally impossible, not if it is legally possible but factually unsupported. (Doc. 20 at 5-6; Doc. 31 at 4). The suggestion is wrong. In *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), the plaintiffs sued a non-resident manufacturer and several of its resident sales representatives in connection with the sale of the drug Redux, accusing the representatives of negligent misrepresentation. The defendants presented evidence that one of the representatives had never sold Redux, and the plaintiffs offered no evidence to the contrary. *Id.* at 1321. The Court acknowledged that Alabama law allows a sales representative to be held liable for negligent representation, but it nevertheless held that the representative was fraudulently joined because, "[w]ith no evidence that [the representative] had anything to do with Redux, there is no reasonable possibility that Plaintiffs can establish a cause of action against him for negligent misrepresentation under Alabama law." *Id.* at 1324.

On motion to remand, the plaintiffs argued that, based on the affidavit of their expert, they have evidence that Clarke negligently supplied electricity to the plaintiffs' home, which had signs of inadequate and dangerous wiring visible from the meter box. The Court found this argument insufficient to avoid fraudulent joinder, because the

amended complaint is utterly silent about any such basis of liability. The plaintiffs accept that they cannot avoid fraudulent joinder based on a claim they did not assert, but they argue the Court should have found that the amended complaint is "broad enough to encompass the claim that Clarke-Washington negligently supplied electricity to a home with dangerous wiring issues." (Doc. 27 at 3). They offer no textual demonstration how such a contorted reading of the amended complaint could be sustained, and it plainly cannot be.

## CONCLUSION

For the reasons set forth above, the motions to reconsider are **denied**.

DONE and ORDERED this 11th day of January, 2010.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE