# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DAVID H. NELSON, etc., et al.,** | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )    CIVIL ACTION 09-0520-WS-B |
| | ) |
| **WHIRLPOOL CORPORATION, et al.,** | ) |
| | ) |
|     **Defendants.** | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion for leave to amend the complaint. (Doc. 47). Embedded in the motion is a motion to remand the action to state court. (*Id*. at 6). The parties have submitted briefs in support of their respective positions, (Docs. 47, 50, 51, 55, 73, 82, 83, 85), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion for leave to amend is due to be granted and that the motion to remand is due to be denied.

## BACKGROUND

On January 30, 2009, a combination air conditioner/heater window unit manufactured by defendant Whirlpool Corporation ("Whirlpool") exploded and/or caught fire, setting afire the home of the plaintiffs. They escaped the conflagration, but their three minor children did not. In this lawsuit, the plaintiffs, as the personal representatives of their children's estates, sue for their wrongful deaths under Alabama law, alleging claims of negligence, wantonness and products liability.

At the time of removal, the defendants were Whirlpool, Lowe's Home Centers, Inc. ("Lowe's"), and Clarke-Washington Electric Membership Corporation ("Clarke"). Removal was effected by Whirlpool and Lowe's on the basis of diversity of citizenship.

[1]

Although Clarke, like the plaintiffs, is an Alabama citizen, the removing defendants argued that its citizenship could be ignored because it was fraudulently joined. The Court denied the plaintiffs' motion to remand, concluding that Clarke was fraudulently joined and that the amount in controversy exceeds $75,000. (Doc. 17). The Court approved interlocutory appeal of the latter ruling but not of its fraudulent joinder decision. (Doc. 34). The Court declined the request of Whirlpool and Lowe's to dismiss Clarke as a defendant because Clarke (which had appeared and defended, (Doc. 1 at 113)), had not requested such relief and because the movants did not assert or demonstrate standing to seek a non-moving co-defendant's dismissal. (Doc. 17 at 12).

Only Count III of the amended complaint, under which removal was undertaken, is asserted against Clarke. It alleges that Clarke:

> negligently and/or wantonly breached its duty by:
> a. Failing to properly operate, maintain and inspect the electrical distribution lines and/or distribution transformer servicing the Plaintiffs' home;
> b. Failing to provide proper and adequate over-current and surge protection to the electrical distribution lines and/or distribution transformer servicing the Plaintiffs' home;
> c. Failing to properly operate, maintain and inspect the overhead service entrance cable to the Plaintiffs' home;
> d. Failing to provide proper and adequate over-current and surge protection to the overhead service entrance cable to the Plaintiffs' home;
> e. Failing to properly operate, maintain and inspect the meter box and meter set servicing the Plaintiffs' home; and/or
> f. Failing to provide proper and adequate over-current and surge protection to the meter box and meter set servicing the Plaintiffs' home.

(Doc. 1 at 56).

The Court ruled that Clarke's joinder was fraudulent because the plaintiffs admitted they had no evidence there was anything wrong with any of the components and no evidence that any of the components experienced a surge or similar event. The Court further ruled that, using the test proposed by the defendants and unchallenged by the plaintiffs, their lack of evidence was inexcusable because they had not performed an

investigation reasonable under the circumstances before suing Clarke and because they did not assert that appropriate examinations and testing (none had been done when Clarke was sued) were likely to uncover evidence of Clarke's culpability. On the contrary, their own expert admitted it would be impossible "to even begin to evaluate" whether Clarke could be liable until after future examination, testing and disassembly was accomplished. (Doc. 17 at 9-11).

The plaintiffs also attempted to justify remand by relying on an affidavit from a second expert, who noted the open and obvious existence of improper wiring outside the house and below the meter box and on Alabama law that an electrical utility can be liable if it supplies electricity to a residence with actual knowledge of a defective or dangerous condition in the home's wiring, even though that wiring is the direct responsibility of the homeowner and not the utility. The Court rejected this argument because, whatever the law and whatever the evidence, fraudulent joinder must be assessed "'under the circumstances alleged in the complaint.'" (Doc. 17 at 11 (quoting *Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007)). The amended complaint provided a limited and exclusive list of Clarke's allegedly negligent conduct, and that list was confined to the meter box and components above the meter box (all of which are the direct responsibility of the utility) and did not include providing electricity to a home with knowledge of the home's defective or dangerous wiring.

The proposed second amended complaint removes the allegations quoted from the first amended complaint. In their place, the plaintiffs would allege liability based on the evidence from its second expert:

> Upon information and belief, Defendant, Clarke-Washington, had actual notice of a dangerous electrical condition in the Plaintiffs' home and/or in the electrical supply lines or other equipment providing electricity to Plaintiffs' home. Despite that knowledge, Clarke-Washington negligently and/or wantonly supplied electricity to Plaintiffs' home.

(Doc. 47, Attachment at 5).

## DISCUSSION

Three primary questions emerge from the plaintiffs' motions: what test should be applied in evaluating whether to allow amendment, how that test should be administered, and whether the case should be remanded if amendment is allowed. The Court concludes that the last question should be addressed first, since the answer to the first question flows from it.

## I. The Effect of Amendment.

The plaintiffs maintain that granting their motion to amend would require remand under two provisions of the federal removal statute. The Court considers them in turn.

### A. Section 1447(e).

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447(e). Joining a non-diverse defendant would destroy subject matter jurisdiction. *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858, 861-62 (11th Cir. 1998).[1] It would thus require remand under Section 1447(e). *Id*. at 862.

By its terms, Section 1447(e) applies only when an "additional" defendant is "join[ed]." The plaintiffs, however, do not seek to join an additional defendant; Clarke has not been dismissed from this lawsuit, and the plaintiffs acknowledge that Clarke "remains as a Defendant in this case." (Doc. 47 at 2).[2] Their purpose is not to join Clarke as a defendant but "to clarify their allegations against" Clarke, an existing party.

---

[1] "When the district court granted Ingram's motion to add the City as a defendant, complete diversity no longer existed between the parties, thereby destroying subject matter jurisdiction." *Id*.

[2] Every brief filed by the plaintiffs acknowledges this obvious fact. (Doc. 55 at 9 ("Clarke-Washington is still a party to this case."); Doc. 73 at 2 (Clarke "appears to be a party because it has never been dismissed"); Doc. 85 at 10 (Clarke "remains a party")).

(Doc. 47 at 1; *accord* Doc. 73 at 6-7). Under such circumstances, "§ 1447(e) has no application." *Herring v. Beasley*, 2005 WL 1475304 at *6 n.8 (S.D. Ala. 2005).

The plaintiffs fault the Court for not dismissing Clarke when it found Clarke to be fraudulently joined. According to the plaintiffs, the Eleventh Circuit has "held" that, "when a court finds that a defendant has been fraudulently joined, it ***must*** dismiss the defendant from the action." (Doc. 73 at 5 (boldface and italics in original)). Because "the proper result should have been to dismiss" Clarke, the plaintiffs argue that the Court should treat Clarke as if it had been dismissed and conclude that their motion to amend seeks joinder of an additional defendant for purposes of Section 1447(e). (*Id*. at 6; Doc. 85 at 10).

The problems with this argument are myriad. As a threshold matter, the plaintiffs have not shown that a district court is required to dismiss a fraudulently joined defendant. The plaintiffs rely exclusively on *Florence*, where the appellate court stated that, "[i]n that situation [fraudulent joinder], the federal court must dismiss the non-diverse defendant" and deny the motion to remand. 484 F.3d at 1297. The quoted statement in *Florence* is dicta (not holding, as the plaintiffs represent), since the Eleventh Circuit ruled that the non-diverse defendant was not fraudulently joined. *Id*. at 1299. It is also unsupported by *Henderson v. Washington National Insurance Co*., 454 F.3d 1278 (11th Cir. 2006), the only authority the *Florence* Court cited as requiring the dismissal of a fraudulently joined defendant.

Even had the Eleventh Circuit held that dismissal of a fraudulently joined defendant is required, it has not held that such dismissal is required absent a request from the fraudulently joined defendant for that relief. Such a rule would be unlikely, since the continued presence of the fraudulently joined defendant does not affect the Court's subject matter jurisdiction and since a defendant can elect to defend a claim that appears to have no chance of success. Indeed, that is precisely the situation here. Clarke not only failed to support removal but, once the plaintiffs' motion to remand was denied, it filed

its own motion to reconsider that denial and insisted that, "under the governing law, Clarke-Washington was not fraudulently joined." (Doc. 20 at 3).[3]

It must be noted that nothing prevented the plaintiffs, if they thought Clarke's dismissal tactically significant, from moving the Court to dismiss Clarke, either pursuant to *Florence*'s dicta or under Rule 41(a). Instead, the plaintiffs remained silent for six months after the Court's denial of remand before asserting that the Court "should have" dismissed Clarke. Even now, the plaintiffs have not moved for Clarke's dismissal.

Even were there a rule requiring the Court unilaterally to dismiss Clarke despite Clarke's disinterest in dismissal without prejudice and the plaintiffs' failure to seek dismissal, the plaintiffs have not shown that Section 1447(e) would apply to a post-dismissal motion to amend the complaint as to Clarke. As noted, Section 1447(e) applies

---

[3] Clarke concluded its lengthy briefing on motion to reconsider with a perfunctory alternative motion for an order dismissing all claims against it with prejudice. (Doc. 20 at 10-11). The Court denied this alternative motion because it was unaccompanied by the briefing required by Local Rule 7.1(a). (Doc. 21). This was entirely appropriate, as controlling law confirms that the failure to submit a brief required by local rules justifies summary denial of the motion. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979); *see also Reese v. Herbert*, 527 F.3d 1253, 1264 n.17 (11th Cir. 2008) ("The court was by no means obligated to overlook this violation of the local rules.") (citing *Layfield*). Briefing was especially necessary on this motion, since it implausibly sought dismissal with prejudice (which would preclude the plaintiffs from ever suing Clarke in connection with the decedents' deaths), even though the Court had concluded only that the plaintiffs presently had no evidence to support the claims asserted against Clarke in the amended complaint, not that they could never develop such evidence or that they had no evidence to support other, unalleged claims. The plaintiffs have suggested no scenario under which the Court could have legitimately dismissed Clarke with prejudice.

Although the denial was explicitly made without prejudice to Clarke's ability to file a second motion complying with the District's briefing requirement, Clarke never again sought dismissal. It did, however, file a 14-page supplemental brief in support of remand. (Doc. 31). Clarke therein confirmed that it had no interest in a dismissal without prejudice (the only kind it legitimately could have obtained), because such a dismissal would leave it exposed to a new lawsuit by the plaintiffs. (*Id.* at 6-7). This admission and the other surrounding circumstances reflect that Clarke was never serious about its alternative motion to dismiss and preferred to litigate instead. The plaintiffs offer no authority supporting its position that a court has no choice but to dismiss a fraudulently joined defendant that does not wish to be dismissed.

to the "joinder" of "additional" defendants. According to the plaintiffs, any dismissal of Clarke would have to be with leave to amend, (Doc. 73 at 6), and it is not intuitively obvious that an amended complaint as to a defendant dismissed with leave to amend would accomplish the "joinder" of that already-named defendant or that such a defendant would constitute an "additional" defendant.[4] The plaintiffs simply assume the conclusion, and that is inadequate to sustain their position.

Finally, whatever the result might have been had Clarke been dismissed, the reality is that Clarke has not been dismissed. The Court cannot simply pretend that Clarke has been dismissed in order to implicate Section 1447(e).

As the Court noted in its order denying remand, (Doc. 17 at 14), when a defendant has been fraudulently joined, its citizenship is immaterial to the determination of diversity jurisdiction and must be ignored. *Henderson*, 454 F.3d at 1281. The plaintiffs assert that, "if the Court is 'ignoring' Clarke-Washington for the purposes of diversity jurisdiction, then granting leave to amend could be a de facto joinder or re-joinder of Clarke-Washington." (Doc. 85 at 3). They cite, and the Court can locate, no case acknowledging such an animal as "de facto joinder." Nor have they explained how an existing defendant can be "joined" as an "additional" defendant for purposes of Section 1447(e). According to the plaintiffs, analysis is unnecessary because this Court has already "held" that, if a party is being ignored for diversity purposes, then adding that party would be a de facto addition of a new party. (Doc. 85 at 10). *Herring*, on which the plaintiffs rely, does not remotely support that proposition, much less express it as a holding. Nor does *Davis ex rel. Davis v. General Motors Corp.*, 353 F. Supp. 2d 1203 (M.D. Ala. 2005), the only other authority cited by the plaintiffs.[5]

---

[4] For example, joinder of a defendant generally triggers an obligation to serve the defendant with process, but the plaintiffs have identified no requirement that a served defendant that has received dismissal with leave to amend is entitled to fresh service of process merely because an amended complaint is filed.

[5] The plaintiffs also argue that the Court's denial of remand is in "conflic[t]" with *Herring*, because in *Herring* the Court considered the plaintiff's affidavit containing specific
(Continued)

[7]

In short, Section 1447(e) does not apply here, and granting the plaintiffs leave to amend cannot force a remand under that section.

**B. Section 1447(c).**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Despite its seemingly broader language, Section 1447(c) generally "prohibits courts from relying on post-removal events in examining subject matter jurisdiction." *Poore v. American-Amicable Life Insurance Co.*, 218 F.3d 1287, 1290 (11th Cir. 2000), *overruled in part on other grounds*, *Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007).

---

allegations of wrongdoing by the resident defendant, while in this case the Court did not consider an affidavit from the plaintiffs' second expert containing evidence concerning the wrongdoing alleged in the proposed second amended complaint. (Doc. 73 at 1-2). According to the plaintiffs, under *Herring* "the Court is required to remand this case." (*Id*. at 9). As a threshold matter, this argument was not raised on motion to remand or even on motion to reconsider, and its present assertion comes over half a year too late.

Nor is the argument well founded. In *Herring*, the complaint contained general allegations of negligence by the resident defendant but failed to specify just what the defendant had done, and the plaintiff sought to explain what he meant by negligence. That is, the language of the complaint left room for explanation. Here, in contrast, the complaint by its terms provided an exclusive catalog of how Clarke was negligent, leaving no room for additional assertions of negligence. As the Court noted, Eleventh Circuit law on fraudulent joinder explicitly requires that the Court consider only "the circumstances alleged in the complaint." (Doc. 17 at 11). The plaintiffs' choice of language in the amended complaint did not leave open the possibility that other forms of negligence were "alleged in the complaint," and it thus precluded later annotation by affidavit or otherwise. The plaintiffs have persistently described their post-removal conduct as efforts to "clarify" the amended complaint, but it is in fact an attempt to add new forms of negligence to a pleading that unambiguously rules out such allegations. Nothing in *Herring*, or in any authority brought to the Court's attention, remotely supports such an effort. On the contrary, the Fifth Circuit has rejected a gambit similar to that employed by the plaintiffs here. In *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256 (5th Cir. 1995), the plaintiffs sued the non-diverse defendant for breach of contract and of the duty of good faith and fair dealing, claims that patently could not succeed under Texas law. After removal, the plaintiffs presented an affidavit to support a claim of misrepresentation against the non-diverse defendant. The Fifth Circuit held that the affidavit could not be considered "to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint." *Id*. at 263.

Whirlpool argues that when, as here, subject matter jurisdiction exists at the time of removal, it cannot (outside Section 1447(e)) be lost by post-removal changes.

Whirlpool is certainly correct as a general matter. Thus, "events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction." *Poore*, 218 F.3d at 1291. This rule extends to post-removal amendments to the complaint to reduce the damages claimed. *Id*. at 1289, 1291. Similarly, "when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *Rockwell International Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007); *accord IMFC Professional Services, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 157 (old 5th Cir. 1982); *Smith v. Wynfield Development Co*., 238 Fed. Appx. 451, 455 (11th Cir. 2007).

The existence of a federal question is essential for removal jurisdiction based on 28 U.S.C. § 1331, and the existence of a threshold amount in controversy is essential for removal jurisdiction based on 28 U.S.C. § 1332. Since post-removal elimination of these essentials does not deprive the federal court of subject matter jurisdiction, it would be reasonable to extrapolate that post-removal elimination of complete diversity of citizenship likewise does not adversely impact subject matter jurisdiction.

And this is largely true. Thus, "[i]t is well established that the only citizenship of the original parties that matters for purposes of determining whether diversity jurisdiction exists is their citizenship at the time the lawsuit if filed; any changes in a party's citizenship that occur after filing are irrelevant." *Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000); *accord Freeport–McMoRan, Inc. v. K N Energy, Inc*., 498 U.S. 426, 428 (1991) ("'Jurisdiction once acquired … is not divested by a subsequent change in the citizenship of the parties.'") (quoting *Wichita Railroad & Light Co. v. Public Utilities Commission*, 260 U.S. 48, 54 (1922)); *see also Grupo Dataflux v. Atlas Global Group, L.P*., 541 U.S. 567, 568, 570 (2004) (because "the jurisdiction of the court depends upon the state of things at the time of the action brought," answering in the negative "the question whether a party's post-filing change in citizenship can cure a lack of subject-

[9]

matter jurisdiction that existed at the time of filing") (internal quotes omitted). Each of these cases was originally filed in federal court, but the same rule applies to removal actions. *See Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 391 (1998) ("a federal court will keep a removed case" after "the change in citizenship of a party").

The foregoing cases address post-removal alterations in the citizenship of the original parties, but even changes in the identity of the parties are subject to a similar rule. Thus, "'jurisdiction [is not] defeated by the intervention, by leave of court, of a party whose presence is not essential to a decision of the controversy between the original parties.'" *Freeport-McMoRan*, 498 U.S. at 428 (quoting *Wichita Railroad*). Similarly, jurisdiction is not lost by the substitution of a non-diverse party for a diverse party. *See Ingram*, 146 F.3d at 861 (construing *Freeport-McMoRan*). While *Freeport-McMoRan* and *Wichita Railroad* are not removal cases, the same rule obtains in that context. *IMFC*, 676 F.2d at 157 (intervention); *Ingram*, 146 F.3d at 861 (accepting that *Freeport-McMoRan* applies in removal cases).

On the other hand, and as discussed in Part I.A, the post-removal addition of a new, non-diverse party "destroy[s] subject matter jurisdiction." *Ingram*, 146 F.3d at 861-62. Older cases suggested this was true only in the case of indispensable parties,[6] but *Ingram* makes clear that it applies as well to the joinder of non-indispensable parties. *See id*. at 861 n.2 (the addition of a "dispensable" joint tortfeasor destroyed subject matter jurisdiction and required remand under Section 1447(e)). As discussed in Part I.A, *Ingram* does not govern here because the plaintiffs do not seek to add a new party, but it does establish that there are situations in which subject matter jurisdiction existing at the

---

[6] *See In re: Merrimack Mutual Fire Insurance Co.*, 587 F.2d 642, 647 (5th Cir. 1978) (remand is "clearly proper" when the parties joined are indispensable and "clearly improper" when they are not). *Merrimack* discussed *Jett v. Zink*, 362 F.2d 723 (5th Cir. 1966), which explained the unique nature of indispensable parties. "The law is clearly settled that in diversity cases the question of indispensable parties is inherent in the issue of federal jurisdiction and that indispensable parties must be joined, sua sponte by the court if need be, even though to do so destroys complete diversity of citizenship of the parties and ousts federal courts of jurisdiction …." *Id*. at 726.

[10]

time of removal is lost by a post-removal loss of complete diversity. Whether the present situation is one of them remains to be determined.

The Supreme Court has repeatedly emphasized the insignificance of the loss of complete diversity on continuing subject matter jurisdiction. In *Freeport-McMoRan*, the Court repeated the "well-established rule that diversity of citizenship is assessed at the time the action is filed. We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." 498 U.S. at 428. In particular, "[*d*]*iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action*. A contrary rule … is not in any way required to accomplish the purposes of diversity jurisdiction." *Id*. at 428-29 (emphasis added).

Similarly sweeping is the High Court's pronouncement that its jurisprudence "measures *all challenges* to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing …." *Grupo Dataflux*, 541 U.S. at 571 (emphasis added). While both *Freeport-McMoRan* and *Grupo Dataflux* involved original actions, there is no obvious reason that a different rule would obtain in removal cases, especially given the "forum-manipulation concerns" that exist in that context. *Rockwell*, 549 U.S. at 474 n.6.

Despite its apparent breadth, the Eleventh Circuit has limited the reach of *Freeport-McMoRa*n to the substitution context. *Ingram*, 146 F.3d at 861.[7] It is nevertheless clear that the post-removal loss of complete diversity generally does not eliminate subject matter jurisdiction. It is equally clear that post-removal loss of subject matter jurisdiction when a plaintiff amends its complaint to state a viable cause of action against a fraudulently joined defendant would represent an exception to the general rule.

The parties have presented the Court with no case that would require remand under the circumstances presented here. The plaintiffs, (Doc. 73 at 8-9; Doc. 85 at 6-7),

---

[7] The appellate court has not addressed the proper construction of *Grupo Dataflux*.

focus on *Ingram* and *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365 (1978), but both involved the naming of a new defendant and so are inapplicable here.[8] The plaintiffs also proffer *Davis* and *Herring*, but in both cases amendment of the complaint was allowed before the Court ruled on the fraudulent joinder issue, and the amendment merely clarified the situation existing at the point of removal. The plaintiffs' proposed amendment, in contrast, is immaterial to the existence of diversity when the case was removed, which has already been determined. Clarke (which sides with the plaintiffs on this issue) cites *Town of Gordon v. Great American Insurance Co.*, 331 F. Supp. 2d 1357 (M.D. Ala. 2004), which is but a particular application of *Owen*, and four district court cases from other circuits, all of which involved the addition of new defendants.

On the other side, Whirlpool relies on the sweeping pronouncement in *Poore* that Section 1447(c) "prohibits courts from relying on post-removal events in examining subject matter jurisdiction." 218 F.3d at 1290. For several reasons, the Court does not consider *Poore* dispositive. First, *Poore* did not address the actual effect on subject matter jurisdiction of various post-removal developments but only whether Section 1447(c) allows courts to consider post-removal developments as a basis for remand under Section 1447(c). Second, *Poore* did not address *IMFC*, which stated that "we conclude that § 1447(c) does not preclude examination of post-removal developments to determine whether jurisdiction has been lost." 676 F.2d at 158. Third, while Whirlpool's proffered quote appears all-encompassing, *Poore* itself recognized that some post-removal events "may divest the district court of jurisdiction." 218 F.3d at 1291 n.2 (citing *Merrimack*).

The old Fifth Circuit in *IMFC* employed several tools in determining whether a post-removal development (the dismissal of a third-party complaint against a federal defendant) stripped the trial court of subject matter jurisdiction. First, the Court

---

[8] *Owen* is different only in that the defendant filed a third-party complaint against the non-diverse party before the plaintiff amended the complaint in order to sue the non-diverse party. Despite this wrinkle, the plaintiff's action still constituted the addition of a new defendant vis-à-vis the plaintiff, as the Supreme Court recognized. 437 U.S. at 368 ("[T]he respondent was granted leave to file an amended complaint naming Owen as an additional defendant.").

[12]

"[d]r[ew] from precedents in analogous situations." 676 F.2d at 158. Second, the Court concluded that "[p]olicy favors the retention of jurisdiction." *Id*. at 159. Third, the Court noted that "all other courts that have considered this issue have reached the same conclusion …." *Id*. This Court follows the same path.

In the situation most analogous to the present one, subject matter jurisdiction is not lost. Because Clarke was fraudulently joined, its citizenship was ignored in determining the existence of complete diversity at the time of removal. Regardless of its actual citizenship, for diversity purposes Clarke is considered not to be a citizen of Alabama. The proposed amendment, if granted, would require the Court to consider Clarke to be a citizen of Alabama. But as noted above, a post-removal change in the citizenship of an existing party does not divest a court of jurisdiction. Because amendment would accomplish only a post-removal change in the citizenship of an existing party (from nothing to Alabama), it cannot divest the Court of subject matter jurisdiction.

Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would also nullify the well-established rule that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal …." *Legg*, 428 F.3d at 1322 (internal quotes omitted). That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand. Nothing presented to the Court commends such an implausibly tortured result.

Policy also favors the retention of jurisdiction. As the Supreme Court has noted, "removal cases raise forum-manipulation concerns" when a plaintiff involuntarily dragged into federal court attempts to "plead away jurisdiction through amendment." *Rockwell*, 549 U.S. at 474 n.6. A rule that would reward such conduct should not easily be embraced, since "'Congress did not extend such protection [removal] with one hand and with the other give plaintiffs a bag of tricks to overcome it.'" *Pretka v. Kolter City*

"[d]r[ew] from precedents in analogous situations." 676 F.2d at 158. Second, the Court concluded that "[p]olicy favors the retention of jurisdiction." *Id*. at 159. Third, the Court noted that "all other courts that have considered this issue have reached the same conclusion …." *Id*. This Court follows the same path.

In the situation most analogous to the present one, subject matter jurisdiction is not lost. Because Clarke was fraudulently joined, its citizenship was ignored in determining the existence of complete diversity at the time of removal. Regardless of its actual citizenship, for diversity purposes Clarke is considered not to be a citizen of Alabama. The proposed amendment, if granted, would require the Court to consider Clarke to be a citizen of Alabama. But as noted above, a post-removal change in the citizenship of an existing party does not divest a court of jurisdiction. Because amendment would accomplish only a post-removal change in the citizenship of an existing party (from nothing to Alabama), it cannot divest the Court of subject matter jurisdiction.

Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would also nullify the well-established rule that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal …." *Legg*, 428 F.3d at 1322 (internal quotes omitted). That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand. Nothing presented to the Court commends such an implausibly tortured result.

Policy also favors the retention of jurisdiction. As the Supreme Court has noted, "removal cases raise forum-manipulation concerns" when a plaintiff involuntarily dragged into federal court attempts to "plead away jurisdiction through amendment." *Rockwell*, 549 U.S. at 474 n.6. A rule that would reward such conduct should not easily be embraced, since "'Congress did not extend such protection [removal] with one hand and with the other give plaintiffs a bag of tricks to overcome it.'" *Pretka v. Kolter City*

*Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005)). It is immaterial whether these particular plaintiffs harbor any such intent, since the governing rule must apply in all cases.

Finally, the only two cases known to the Court that have addressed the effect of a plaintiff's post-removal amendment of its complaint to state a viable cause of action against an existing, fraudulently joined defendant both concluded that amendment would not divest the court of jurisdiction.

In *Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256 (5th Cir. 1995), the complaint asserted no claim against the non-diverse defendant. After removal, the plaintiffs moved to amend the complaint to rectify that deficiency. The trial court ruled that it would be futile to grant the motion, "because a complaint amended post-removal cannot divest a federal court of jurisdiction." *Id*. at 264. The Fifth Circuit affirmed. "[R]emoval jurisdiction [is determined] on the basis of claims in the state court complaint as it exists at the time of removal" because, "[w]ithout such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved." 44 F.3d at 264.

In *Davenport v. Ford Motor Co.*, 2006 WL 2048308 (N.D. Ga. 2006), the Court found that the non-diverse defendant was fraudulently joined because the plaintiffs could not possibly prevail on their single claim for breach of warranty in light of their valid warranty disclaimers. *Id*. at *4. The plaintiffs moved to amend the complaint to add a negligence claim, but the Court held that jurisdiction must be measured as of the time of removal. *Id*. at *4-5. Because the only exception to this rule involves the joinder of new (indispensable) parties, the general rule applied. *Id*. at *5 n.7. The plaintiffs were given leave to amend, but the amendment did not divest the Court of jurisdiction. *Id*. at *6.

As in *IMFC*, the rule in analogous situations, considerations of policy, and the conclusions of other courts all reflect that the post-removal assertion of a viable cause of action against a fraudulently joined defendant does not strip the Court of subject matter

jurisdiction that existed at the time of removal. Because allowing the plaintiffs' proposed amendment would not eliminate subject matter jurisdiction, remand cannot be ordered under Section 1447(c).

## II. The Standard for Evaluating the Plaintiffs' Motion.

The parties initially assumed that the Court should employ the factor analysis articulated in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). (Doc. 47 at 3-5; Doc. 50 at 4-5; Doc. 51 at 5-6). The *Hensgens* Court recognized that Rule 15(a) provides that a court "should freely give [leave to amend] when justice so requires" and concluded that, when an amendment "will determine the continuance of … jurisdiction," assessing what "justice requires" dictates that a court "consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." 833 F.2d at 1182. These factors include "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory is asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id*.

As discussed in Part I, allowing the plaintiffs' proposed amendment will not alter the Court's continuing subject matter jurisdiction. There is thus no need to consider the *Hensgens* factors in order to protect against an improper attempt to divest the Court of jurisdiction. The parties, for reasons that do not entirely echo the Court's, now agree that only the usual Rule 15 analysis, unamplified by *Hensgens*, should apply to the plaintiffs' motion. (Doc. 55 at 8-9; Doc. 73 at 3-4, 6-7; Doc. 82 at 1-4; Doc. 83 at 4; Doc. 85 at 2).

## III. Evaluation of the Plaintiffs' Motion.

Eleventh Circuit law is clear that leave to amend should be given under Rule 15(a) "[i]n the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *McKinley v. Kaplan*, 177 F.3d

[15]

1253, 1258 (11th Cir. 1999) (internal quotes omitted). Whirlpool raises bad faith, and both it and Clarke assert futility of amendment.

Whirlpool announces that the plaintiffs' request for amendment is in bad faith because it is being made "with the sole intent to deprive the federal court of diversity jurisdiction." (Doc. 83 at 5). As the Court has concluded in Part I, amendment cannot work a divestiture of subject matter jurisdiction, so any bad faith by the plaintiffs will not be rewarded by amendment.

Whirlpool argues that amendment is futile because the plaintiffs lack evidence to support the proposed new allegations against Clarke. (Doc. 51 at 10-11; Doc. 83 at 6-7). However, Whirlpool concedes that "[f]utility is judged under the same criteria as a motion to dismiss." (Doc. 83 at 6).[9] "When considering [such] a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and the exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted). Thus, under Whirlpool's own authorities, the Court in undertaking a Rule 15(a) futility analysis is precluded from assessing the strength or even existence of the plaintiffs' evidence in support of their proposed new claim. Because Whirlpool does not assert that the plaintiffs' allegations, if proved, would not support Clarke's liability, their futility argument fails.[10]

Clarke's futility argument rests on the plaintiffs' use of the term, "[u]pon information and belief." According to Clarke, the second amended complaint would be subject to immediate dismissal because only matters particularly within the defendant's

---

[9] This proposition is amply supported by Eleventh Circuit precedent. *E.g., Hall v. United Insurance Co.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (internal quotes omitted).

[10] Whirlpool believes that *Legg* allows it to prevail by presenting evidence and pointing out the plaintiffs' asserted lack of countering evidence. (Doc. 51 at 11-12). *Legg* addresses the procedure for deciding whether a non-diverse defendant was fraudulently joined, not the procedure for deciding Rule 15(a) motions.

knowledge can be alleged based on information and belief. (Doc. 50 at 7). Clarke's single case does not support the proposition that proper usage of "information and belief" pleading is so limited. At any rate, the Court construes the proposed second amended complaint as employing this qualifier only with respect to the allegation of Clarke's "actual notice" of a dangerous electrical condition, and Clarke's awareness of the dangerous condition is something of which only Clarke could have personal knowledge. *E.g., Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (the plaintiff could properly allege the defendants' knowledge based on information and belief).

In a related vein, Clarke argues that a plaintiff cannot properly invoke "information and belief" language in a pleading without setting forth the information on which the belief is based. (Doc. 50 at 7-8). Clarke relies only on two trial court decisions, neither of which arises within the Eleventh Circuit and neither of which clearly applies outside the Rule 9(b) context. Clarke has therefore not adequately supported its position that failure to identify such information is fatal to a motion to amend. At any rate, although the proposed second amended complaint does not list the facts underlying the plaintiffs' belief that Clarke had actual notice of the home's dangerous wiring, the affidavit of its expert does so. According to the affidavit, which the Court discussed in its order denying remand, at least some of the dangerous wiring was in plain view directly below the meter box and would have been open and obvious to Clarke representatives interacting with the meter box, which they would likely do on a regular basis. (Posey Affidavit, ¶ 8). The plaintiffs are thus capable of alleging the information underlying their belief that Clarke had actual notice of the dangerous electrical condition, and Clarke has not explained how it could secure dismissal of the second amended complaint given the ease with which the plaintiffs could amend it to add this material. The proposed second amended complaint is thus not futile.

Because the ordinary Rule 15(a) analysis applies, and because nothing that could justify denial of amendment under that analysis has been shown, the plaintiffs' motion for

leave to amend is due to be granted. Because it is unnecessary to its decision, the Court leaves unresolved whether amendment would be allowed under the *Hensgens* analysis.[11]

**CONCLUSION**

For the reasons set forth above, the plaintiffs' motion for leave to amend the complaint is **granted**, and the plaintiffs' embedded motion to remand is **denied**. The plaintiffs are **ordered** to file and serve their second amended complaint on or before **August 6, 2010**.

DONE and ORDERED this 4th day of August, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] Buried in Whirlpool's initial brief is a request for an award of fees and costs for the plaintiffs' alleged violation of Rule 11 in propounding the proposed second amended complaint, (Doc. 51 at 13-15), which the Court construes as a motion for sanctions. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). The motion is procedurally insupportable. First, "[a] motion for sanctions must be made separately from any other motion," Fed. R. Civ. P. 11(c)(2), but Whirlpool did not file a separate motion devoted only to the subject of Rule 11. Second, "the motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged [material] is withdrawn or appropriately corrected within 21 days after service or within another time the court sets," *id.*, and Whirlpool does not represent that it complied with this requirement. Failure to give the required 21-day notice "forecloses Rule 11 sanctions." *Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 786 (11th Cir. 2006); *accord In re: Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3rd Cir. 2008); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 679 (4th Cir. 2005); *In re: Pratt*, 524 F.3d 580, 588 (5th Cir. 2008); *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815, 826 (9th Cir. 2009); *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006). The motion is thus **denied**. The Court has and expresses no opinion on the substantive merits of Whirlpool's Rule 11 argument.