IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID H. NELSON, etc., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 09-0520-WS-B |
| | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on the defendant's *Daubert* motion as to Roger Owens. (Doc. 151). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 152, 166, 169-76, 181), and the motion is ripe for resolution.[1]

The plaintiffs are the personal representatives of the estates of their three minor children, who died in a house fire on January 30, 2009. The defendant is the manufacturer of a combination air conditioner/heater window unit in the home. The amended complaint alleges that the unit caught fire, engulfing the house and claiming the children's lives. (Doc. 1 at 53).

Roger Owens is an electrical engineer. Owens identified the cause of the fire as a failure within the unit's control box. In particular, Owens isolated two switch terminals as the only possible sources of the fire, from a contact failure resulting in electrical arcing. Terminal 9 supplies power to the air conditioning compressor, and Owens identified it as the cause of the fire if the unit was in cooling mode. Terminal 6 supplies

---

[1] The plaintiffs' motion for leave to file sur-reply, (Doc. 184), is **denied**.

[1]

power to the heaters, and Owens identified it as the cause of the fire if the unit was in the heat cycle.[2] The defendant challenges Owens' ability to render these opinions.

The defendant has requested an evidentiary hearing, (Doc. 151 at 2), a decision committed to the Court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id*. (internal quotes omitted). For example, "[a] district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Although the defendant cites to other experts to show their opinions conflict with Owens', as discussed below that is not grounds for excluding his opinions; even if it were, their opinions are adequately set forth in the deposition excerpts on which the defendant relies. Accordingly, the Court declines to hold a hearing.[3]

"Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc*., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). There are thus three discrete inquiries:

---

[2] Owens recognized that, if the unit was in cooling mode, Terminal 6 could not be the cause of the fire (because it would not be energized), and if it was in the heat cycle, Terminal 9 could not be the cause, for the same reason.

[3] The Court also declines the defendant's request to schedule oral argument. *See* Local Rule 7.3.

qualifications, relevance, and reliability.[4] The burden of establishing these three requisites lies with the proponent. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).[5]

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (an economic expert was qualified even though he "ha[d] no real estate development experience and thus no basis to opine regarding how the pilfered funds would have been invested by the Plaintiffs"); *id*. at 669 (expert knowledgeable concerning the practices of Mexican immigration authorities generally was qualified to testify even though he had no experience with Monterey officials in particular). The defendant, which has employed Owens' services in numerous cases, does not challenge his qualifications. (Doc. 152 at 18).

To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." The evidence must "concern matters that are beyond the understanding of the average lay person. ... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. In addition, there must be "an appropriate 'fit' with respect to the offered opinion and the facts of the case." *McDowell v. Brown*, 392 F.3d 1283, 1299

---

[4]*See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate").

[5]Expert testimony must also satisfy other applicable rules of evidence, including Rules 401, 402 and 403. *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1309 (11th Cir. 1999).

(11th Cir. 2004); *accord Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). The defendant argues that Owens' opinion that a failure at Terminal 9 caused the fire does not "fit" the facts of the case because the unit was not in cooling mode but in the heat cycle. (Doc. 152 at 8; Doc. 181 at 1).

The defendant's argument assumes it has been definitively resolved that the unit was in the heat cycle at the moment the fire started. It has not. Most obviously, Owens' testimony is that Terminal 9 shows physical signs of extreme temperature exposure from an internal source that are consistent with and indicate a fire-causing contact failure, and the defendant has not attempted to show that the methodology Owens employed to reach this conclusion is unreliable. That is, Owens' scientific testimony itself indicates the unit was in cooling mode, and it is sufficient on its own to raise a jury question as to whether the unit was in that mode when the fire began.

The defendant complains that Mrs. Nelson and her surviving son testified the heater was on, the complaint alleges it, Owens' report states it, and the cold weather supports it. (Doc. 152 at 11-12; Doc. 181 at 6-7). The actual testimony is not as strong or complete as the defendant believes, and it is certainly not unheard of for a family member growing too hot during the night to alter a setting. The defendant also ignores its own expert's initial belief – later retracted – that Terminal 9 was energized at the time of the fire. But that is for the jury to sort out; the defendant offers no explanation how the Court can on a *Daubert* motion take the factual question of the unit's setting from the jury.

Even were the lay evidence as strong as the defendant presents it, and even if the Court could withdraw fact questions from the jury on a *Daubert* motion, as noted above Owens' own testimony creates a fact issue as to the unit's setting. It is not correct, as the defendant appears to assume, that an expert is forbidden to draw conclusions that suggest a different underlying fact than testified to by lay witnesses, as is obvious from a simple example. Under the defendant's view, once a lay witness testified without lay contradiction that she was driving 30 miles per hour at the moment of collision, no expert

could testify that, based on his exhaustive and impeccable scientific study, her speed at collision was 50 mph. The suggestion is untenable; the very point of scientific testimony is to test and either support or discredit unscientific assumptions and assertions about the relevant events, not to be held hostage to them.

The most heavily litigated component of the *Daubert* analysis is reliability. Expert testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell*, 392 F.3d at 1298. Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community. 509 U.S. at 593-94. "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Among such factors, "[i]n evaluating the reliability of an expert's method, ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing

experts and their opinions. *Quiet Technology*, 326 F.3d at 1341. Thus, for example, "a district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness." *Rink*, 400 F.3d at 1293 n.7.

Owens' initial report specified the cause of the fire as a contact failure at Terminal 9. Shortly before his deposition, Owens issued a second report, which identified the cause as a contact failure at either Terminal 9 or Terminal 6, depending on the mode in which the unit was operating. The defendant argues that Owens' implication of Terminal 6 is unreliable because his methodology failed to follow any scientific basis and because his opinion is contrary to the scientific testing in the case. (Doc. 152 at 15; Doc. 181 at 1).

According to the defendant, the only basis for Owens' opinion as to Terminal 6 is that he belatedly realized Terminal 9 was not energized in the heat cycle but that Terminal 6 was. If that were indeed Owens' only basis, there would be a serious question of the reliability of his opinion concerning Terminal 6, but it is not.

As discussed by the plaintiffs, Owens' methodology, recognized by authoritative sources, was to utilize a process of elimination of possible causes of the fire. He first ruled out external sources, then identified possible internal sources in the area of the house where the fire was initially seen. He ruled out the house's wiring, then eliminated the receptacle to which the unit was connected and the power cord connecting the unit to the receptacle. Owens then ruled out all sources within the unit other than the control box. The physical evidence indicated the fire started inside the control box, because the capacitor did not blow out as it is designed to do when subjected to heat from outside the control box but melted first from the wiring connected to the selector switch, which was consistent with a fire originating from within the control box. Owens then ruled out the capacitor and all terminals except Terminal 9 and Terminal 6.

At this point, Owens had eliminated, by examination and testing, all possible sources of the fire other than Terminals 9 and 6, and he so stated in his initial report. As

between these two possible sources, Owens identified Terminal 9 as the cause because its more dramatic physical evidence of abnormal electrical activity made it a more likely candidate. Owens did not in his initial report rule out Terminal 6 as the source, and his second report and deposition confirm that he found physical evidence at Terminal 6 sufficient to implicate it as the source. Thus his opinion that Terminal 9 was the cause if the unit was in cool mode and that Terminal 6 was the cause if the unit was in the heat cycle.

The defendant does not argue that Owens' methodology of progressively ruling out fire sources is unreliable. He was thereby left with two possible causes. If the unit was in the heat cycle, as the defendant maintains, Terminal 9 would not be a possible cause, leaving – by the same methodology – Terminal 6 as the only possible cause. Owens' opinion as to Terminal 6 is not unreliable as failing to follow any scientific basis.

The defendant's challenge to Owens' opinion on Terminal 6 as contrary to the scientific testing is likewise unavailing. The defendant is essentially asking the Court to accept the opinion of its experts that there is no evidence of abnormal electrical activity at Terminal 6 over the testimony of Owens that there is, and the Court is precluded from weighing the relative credibility of experts at this stage.

The same is presumably true with respect to the defendants' position that Owens' opinion contradicts that of the plaintiffs' metallurgist, Rex McClellan. At any rate, Owens' opinion is not in irredeemable conflict with McClellan's. Owens testified that pitting and material transfer are indicative of electrical arcing, and there is evidence of pitting and material transfer at Terminal 6. McClellan did testify that he found no physical evidence of arcing at Terminal 9 (he was not asked about Terminal 6), but he also testified that microarcing ordinarily occurs without leaving any physical evidence. McClellan specifically stated that Owens could be correct about the arcing but that he (McClellan) simply could not verify it with physical evidence of microarcing.

Owens' opinion as to Terminal 6 is not an opinion "contrived solely for present litigation" as that and like terms are used in the cases to which the defendant cites. (Doc.

152 at 26-27). His opinion, presumably like all those offered in this litigation, applies pre-existing expertise to this particular case and responds to the issues presented by it, which makes the opinion not suspect but useful. Likewise, his opinion is not simply his "ipse dixit." (*Id*. at 28).

To the uncertain extent the defendant suggests that Owens' opinion is impermissibly speculative because he "equivocates" between Terminal 6 and Terminal 9, (Doc. 152 at 20), the objection is meritless. The dual possibilities are not the result of speculation but a response to differing views among the litigants of the mode in which the unit was operating. Nothing in *McClain v. Metabolife International, Inc.*, 401 F.3d 1233 (11th Cir. 2005), to which the defendant cites, draws Owens' opinion into question.

In its reply brief, the defendant advances a new argument: that Owens did not reliably exclude the power cord as a potential cause of the fire. (Doc. 181 at 1, 6, 9-10). No such argument appears in the defendant's principal brief. District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.[6] The defendant offers no reason the Court should excuse it from application of the rule in this case, and the Court declines to do so. The defendant should not assume its argument would have prevailed had it been timely presented.

---

[6] *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008).

For the reasons set forth above, the defendant's motion to exclude opinions and testimony of Roger Owens is **denied**.

DONE and ORDERED this 12th day of May, 2011.

<pre>                              s/ WILLIAM H. STEELE
                              CHIEF UNITED STATES DISTRICT JUDGE</pre>