# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID H. NELSON, etc., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 09-0520-WS-B |
| ) | |
| WHIRLPOOL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on the defendant's *Daubert* motion as to Michael Schulz. (Doc. 155). The parties have submitted briefs and evidentiary materials in support of their respective positions, (Docs. 156, 167-68, 177-80, 182), and the motion is ripe for resolution.[1]

The plaintiffs are the personal representatives of the estates of their three minor children, who died in a house fire on January 30, 2009. The defendant is the manufacturer of a combination air conditioner/heater window unit in the home. The amended complaint alleges that the unit caught fire, engulfing the house and claiming the children's lives. (Doc. 1 at 53).

Michael Schulz is a fire cause and origin expert. He opines that the area of origin is an approximately three-foot by four-foot area of the living room with the unit in its center, and that the point of origin is the control box of the unit. The defendant asks the Court to "exclude [Schulz's] testimony regarding his determination as to the point of origin of this fire." (Doc. 156 at 1).

---

[1] The plaintiffs' motion for leave to file sur-reply, (Doc. 184), is **denied**.

The defendant has requested an evidentiary hearing, (Doc. 155 at 2), a decision committed to the Court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id*. (internal quotes omitted). For example, "[a] district court should conduct a *Daubert* inquiry when the opposing party's motion for a hearing is supported by conflicting medical literature and expert testimony." *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Although the defendant cites to other experts to show their conflicting opinions, as discussed below that is not grounds for excluding Schulz's opinions; even if it were, their opinions are adequately set forth in the deposition excerpts on which the defendant relies. Accordingly, the Court declines to hold a hearing.[2]

"Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc*., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability.[3] The burden of establishing these three requisites lies with the proponent. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).[4]

---

[2] The Court also declines the defendant's request to schedule oral argument. *See* Local Rule 7.3.

[3]*See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate").

[4]Expert testimony must also satisfy other applicable rules of evidence, including Rules 401, 402 and 403. *Allison v. McGhan Medical Corp*., 184 F.3d 1300, 1309 (11th Cir. 1999).

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (an economic expert was qualified even though he "ha[d] no real estate development experience and thus no basis to opine regarding how the pilfered funds would have been invested by the Plaintiffs"); *id*. at 669 (expert knowledgeable concerning the practices of Mexican immigration authorities generally was qualified to testify even though he had no experience with Monterey officials in particular). The defendant does not challenge Schulz's qualifications.

To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." The evidence must "concern matters that are beyond the understanding of the average lay person. ... Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63. In addition, there must be "an appropriate 'fit' with respect to the offered opinion and the facts of the case." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004); *accord Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp*., 582 F.3d 1227, 1232 (11th Cir. 2009). The defendant does not challenge Schulz's opinions as irrelevant or unfit.

The most heavily litigated component of the *Daubert* analysis is reliability. Expert testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell*, 392 F.3d at 1298. Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Daubert* identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community. 509 U.S. at 593-94. "Notably, ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Among such factors, "[i]n evaluating the reliability of an expert's method, ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet Technology*, 326 F.3d at 1341. Thus, for example, "a district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness." *Rink*, 400 F.3d at 1293 n.7.

The defendant offers two reliability objections to Schulz's opinion as to the fire's point of origin. First, that he relied on erroneous information received from another expert. Second, that he violated his own standards by failing to properly exclude certain possible causes of the fire. (Doc. 155 at 1-2; Doc. 182 at 1).

As noted, Schulz's assignment was to determine the area of origin of the fire and then, within that area, determine the point of origin. Among the pieces of information on which Schulz relied in reaching his point-of-origin determination was "arc mapping"

[4]

performed by the plaintiff's electrical engineer expert, Roger Owens. Owens reported to Schulz that there was electrical arcing within the control box, in the power cord, and in the house wiring. The defendant complains that the metallurgical experts for both sides have conclusively ruled out any electrical arcing in the control unit, rendering Schulz's opinion unreliable. As discussed more fully in the Court's order addressing the defendant's *Daubert* motion concerning Owens, the metallurgical experts have not conclusively ruled out arcing within the control unit.[5]

Earlier in the litigation, Schulz submitted an affidavit stating that certain components outside the house, which were the responsibility of the electricity provider, should be evaluated to determine whether any of them were defective, had malfunctioned, or had experienced an electrical surge. The defendant complains that Schulz never performed these evaluations and so could not reliably exclude them as "causes" of the fire. (Doc. 155 at 1-2; Doc. 156 at 17-19; Doc. 182 at 1, 8-9).

What Schulz undertook, and what the defendant seeks to exclude,[6] was a determination of the fire's "point of origin." The point of origin is "the exact physical location where the competent source of ignition comes together with the first fuel ignited contemporaneous with a sufficient concentration of oxygen or air." (Doc. 179, Exhibit 8 at 16). The defendant thus seeks to exclude an opinion on *where* the fire started based on Schulz's failure to determine *why* the fire started. That was not Schulz's task, it is not the stated ground of the defendant's challenge, and it is not a basis for excluding his point-of-origin opinion.

---

[5] The defendant itself pegs the other experts' alleged rejection of abnormal electrical arcing in the unit to their conclusion that the unit was not in cooling mode. (Doc. 156 at 25). As discussed in the Owens order, whether the unit was in cooling mode remains an issue of fact. Thus, even by the defendant's argument, so does the presence of abnormal electrical arcing within the unit.

[6] (Doc. 156 at 1, 5, 10, 23, 25; Doc. 182 at 1, 5, 8, 9, 10).

In its reply brief, the defendant advances a new argument: that Schulz did not reliably exclude the power cord as a potential cause of the fire. (Doc. 182 at 5-8). No such argument appears in the defendant's principal brief. District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.[7] The defendant offers no reason the Court should excuse it from application of the rule in this case, and the Court declines to do so. The defendant should not assume its argument would have prevailed had it been timely presented.

For the reasons set forth above, the defendant's motion to exclude opinions and testimony of Michael Schulz is **denied**.

DONE and ORDERED this 12th day of May, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008).